UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAHAMAT DJIMET HASSAN,

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

Case No. 1:26-cv-08279 (VC)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 1, 2

Petitioner Mahamat Djimet Hassan filed a Petition for Writ of Habeas Corpus (Dkt. No. 1) and a Motion for Temporary Restraining Order ("TRO") (Dkt. No. 2) seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). For the reasons that follow, the Court GRANTS the petition and resolves the TRO as moot.

## I. BACKGROUND

Fleeing Chad, Petitioner entered the United States on or around October 8, 2023 by crossing the Lukeville, Arizona border, and was taken into custody by the Department of Homeland Security ("DHS"). Dkt. No. 1 ¶ 17; Dkt. No. 6 at 8. On December 8, 2023, while still detained, he completed a credible fear interview with USCIS, received a positive credible fear determination by an immigration official, and was placed in removal proceedings under INA § 240. Dkt. No. 6 at 8, 13. ICE released Petitioner on his own recognizance on December 22, 2023. *Id*. at 8, 17–19. After his release, Petitioner filed for asylum and was authorized to work by USCIS. Dkt. No. 1 ¶ 21; Dkt. No. 1-6 at 3.

On February 2, 2024, Petitioner attempted to cross the northern border into Canada, and was returned to the Pacific Highway Port of Entry by Canadian authorities. Dkt. No. 6 at 8. ICE took Petitioner into custody following his return. *Id*. They released Petitioner on his own

recognizance again on March 14, 2024. *Id.* at 8, 21; Dkt. No. 1 ¶ 19; Dkt. No. 1-4 at 2–3. The release order stated that it was entered "[i]n accordance with section 236 of the Immigration and Nationality Act"—i.e., 8 U.S.C. § 1226(a). Dkt. No. 1-4 at 2. It also required that Petitioner enroll and successfully participate in an "Alternative to Detention (ATD) program[,]" and that "[f]ailure to comply with the requirements of the ATD program will result in a redetermination of your release conditions or your arrest and detention." *Id.*

Records submitted by Respondents indicate that between July 2024 and September 2026, Petitioner sustained twenty-two ATD violations, including missed biometric check-ins, home visits, office visits, and GPS reporting. Dkt. No. 6 at 7, 23. There is no indication in the record that Petitioner was ever notified of these violations, and he disputes them in his reply. *See* Dkt. No. 7-1. He claims he attempted to take and submit the required photographs for his biometric check-ins, but that the mobile application used for the check-ins would frequently crash and malfunction. *Id.* ¶ 4. As to the unsuccessful home visits, he claims that these were conducted through video call. *Id.* ¶ 5. Petitioner contends that frequently it was ICE, not him, that would fail to call at the scheduled time. *Id.* ¶¶ 5–6. Petitioner further contends that the one reported GPS failure was because he had recently replaced a phone with a broken screen and failed to properly activate location sharing on his new phone. *Id.* ¶ 7. Finally, he maintains that he never missed any required in-person office visits, and attempted to contact ICE when reporting or scheduling problems arose. *Id.* ¶ 8.

On September 2, 2026, Petitioner appeared for a scheduled ICE check-in at the BI Incorporated Office in Tukwila, Washington. Dkt. No. 1 ¶ 25; Dkt. No. 6 at 7. At this check-in, immigration officers allegedly "discovered that [Petitioner] had 22 ATD violations[,]" and subsequently "approved a custody redetermination based on [Petitioner]'s violations of the terms and conditions" outlined in his order of recognizance. Dkt. No. 6 at 7. There is no indication in the record that Petitioner was notified of the reason for his re-detention when he was arrested, or that he was provided with an opportunity to contest ICE's determination that he had previously violated the conditions of his release.

## II. DISCUSSION

On October 9, 2026, the Court issued an order to show cause, directing Respondents to identify any legal or factual issues distinguishing this petition from similar cases in which the Court ordered the petitioners' immediate release. *See* Dkt. No. 5 (citing *Singh v. Warden of Cent. Valley Annex*, No. 1:26-CV-04243 (VC), 2026 WL 1907196 (E.D. Cal. July 2, 2026); *Gomez Arizendi v. Andrews*, No. 1:26-CV-04993 (VC), 2026 WL 2035433 (E.D. Cal. July 14, 2026); *Casimir v. Chestnut*, No. 1:26-CV-06320 (VC), 2026 WL 2516709 (E.D. Cal. Aug. 25, 2026). Respondents filed a response on October 15, 2026, in which they argued that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(1)(B)(ii), and that due process does not entitle Petitioner to a bond hearing in light of his ATD violations. *See* Dkt. No. 6 at 1–4.

As this Court explained in *Casimir v. Chestnut*, "where a noncitizen is released from immigration detention on their own recognizance, and the Government seeks to revoke that parole and re-detain the individual, process is required prior to that re-detention." 2026 WL 2516709, at *1. "[E]ven assuming that petitioner is currently detained under 8 U.S.C. § 1225(b)(1)(B)(ii) as respondent[s] assert[ ], it is undisputed that petitioner was subsequently released after his re-entry and resided in the United States until his current re-detention." *Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026). Under these circumstances, the Court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme." *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1092–93 (E.D. Cal. 2025) (finding Petitioner had a protected liberty interest where petitioner had been previously released by immigration authorities, even though both parties agreed § 1225(b)(1)(B)(ii) controlled detention).

Applying the balancing test described in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and for the reasons identified in *Singh v. Warden of Cent. Valley Annex*, 2026 WL 1907196 (E.D.

Cal. July 2, 2026), *Gomez Arizendi v. Andrews*, 2026 WL 2035433 (E.D. Cal. July 14, 2026), and *Casimir v. Chestnut*, 2026 WL 2516709, the Court finds that Petitioner has a substantial private interest in maintaining his out-of-custody status, the risk of erroneous deprivation without any hearing is considerable, and Respondents' interest in detaining Petitioner without any process is low as the effort and costs required to provide Petitioner with procedural safeguards are minimal. Accordingly, Petitioner is entitled to a further hearing at which the Government must justify the basis for the revocation of his prior release.

The question, however, remains whether Petitioner should have been provided with notice and a pre-deprivation hearing before his arrest or if a post-deprivation hearing, at which he may contest the revocation of his release, would remedy the constitutional violation. The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see also*, *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted). Whether DHS was required to make that showing before or after Petitioner's arrest remains at issue.

In prior cases courts, including this one, have found that "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025). One such situation is where "providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id.* at *12.

Under the circumstances here, pre-deprivation process was required. First, Respondents have not argued that pre-deprivation process would have been impractical or motivated flight.

Rather, their primary argument is that Petitioner's detention is mandatory and did not require the Government to show any changed circumstances prior to his arrest. *See* Dkt. No. 6 at 2–3. Second, the present record does not support a finding that pre-deprivation process would have been impractical or motivated flight for a number of reasons. Petitioner was arrested at an ICE check-in, demonstrating a desire to comply with the conditions of his release rather than flee. Further, Petitioner contends that he attempted to notify ICE whenever he believed there to be an issue with his reporting. Dkt. No. 7-1 ¶ 7. The Court, therefore, sees no reason why the Government could not have notified Petitioner of his alleged ATD violations, and provided him with a hearing prior to revocation of his release.

## III. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. Respondents are ORDERED to immediately release Petitioner from their custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. The Federal Government is permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.

The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: October 21, 2026

VINCE CHHABRIA
United States District Judge